UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JAMES McCALL AND SAMIA McCALL, ADMINISTRATORS AND PERSONAL REPRESENTATIVES OF THE ESTATE OF M.M. AND HEIRS, INDIVIDUALLY AND ON BEHALF OF C.M. AND S.M., MINORS BY AND THROUGH THEIR GUARDIANS JAMES McCALL AND SAMIA McCALL,<br><br>        Plaintiffs,<br><br>    v.<br><br>BOISE SCHOOL DISTRICT, THE IDAHO DEPARTMENT OF EDUCATION, RYAN GANT, PAMELA DIETZ, HELGA FRANKENSTEIN, ANGELA KULM, DAVE WAGERS, JOHN AND/OR JANE DOE(S) IN THEIR INDIVIDUAL CAPACITIES,<br><br>        Defendants. | Case No. 1:25-cv-00533-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court are two Motions to Dismiss. The first, Dkt. 12, was filed by Defendant Boise School District ("BSD"); the second, Dkt. 16, by Defendant Idaho Department of Education ("IDOE"). The McCalls responded to each motion. Dkts. 21, 22. BSD and IDOE replied to the responses, respectively. Dkts. 23, 24.

**MEMORANDUM DECISION AND ORDER - 1**

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds the decisional process would not be significantly aided by oral argument, the Court will address the motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). For the reasons outlined below, BSD and IDOE's Motions to Dismiss are GRANTED in PART and DENIED in PART.

## II. BACKGROUND

James and Samia McCall are attorneys licensed in Idaho, and are the parents of C.M., M.M., and S.M, who at the time of the events underlying the claims in this case were all minors. Dkt. 1, at 2. M.M. tragically took her own life on November 2, 2023. Dkt. 1, at 5. All the children have (or had) disabilities, and all the children attended public school in the Boise School District. C.M. is currently a senior at Boise High School, and S.M., the youngest sibling, is currently homeschooled. Dkt. 1, at 7-8. All the McCall children were successful academically at school, but due to their disabilities, had difficulties interacting socially and struggled with their mental health while at, and away from, school. *See generally*, Dkt. 1.

Before her passing, M.M. attempted suicide on August 20, 2020, and May 5, 2023. Dkt. 1, at 4. The McCalls filed suit, alleging that M.M.'s death on November 2, 2023, was due to her issues at school, which in turn were due to BSD, BSD's staff, and the IDOE acting with deliberate indifference to M.M.'s disabilities. *Id.* at 5. The McCalls also claim the Defendants' actions and inactions denied S.M., M.M., and C.M. a Free Adequate Public

MEMORANDUM DECISION AND ORDER - **2**

Education ("FAPE") and impermissibly discriminated against them. *See generally*, Dkt. 1.[1] James and Samia McCall further allege M.M.'s death caused injuries to themselves as her parents and to S.M. and C.M.—M.M.'s siblings—as well. Notably, the McCalls never utilized any of the administrative procedures statutorily created to remedy their concerns with BSD such as filing an administrative complaint or engaging in that process.

The McCalls argue BSD and IDOE failed to meet their obligations to the McCall children, as well as themselves, specifically by not complying with the Individuals with Disabilities Education Act ("IDEA"), Title II of the Americans with Disabilities Act ("ADA"), and Section 504 of the Rehabilitation Act ("Section 504"). Through these alleged failures by the school system, the McCalls also allege deprivation of constitutional rights, and have made a state claim for wrongful death, which the Court is presiding over via supplemental jurisdiction.

BSD and IDOE raise a myriad of legal arguments supporting dismissal ranging from the state of the McCalls' legal representations to administrative exhaustion requirements under the IDEA. As explained below, the Court finds some of the McCalls' arguments persuasive at this stage of the case, others not as much.

///

---

[1] Counts I and II are the Estate of M.M. against BSD for violation of the ADA and Section 504. Counts III and IV are C.M. against BSD for violation of the ADA and Section 504. Counts V and VI are S.M. against BSD for violation of the ADA and Section 504. Count VII is James and Samia McCall against BSD and IDOE for associational ADA and Section 504 violations. Count VIII is the Estate of M.M. and James and Samia McCall alleging a Fourteenth Amendment substantive due process violation against BSD brought under § 1983. Count IX is all Plaintiffs against all Defendants for failure to train brought under § 1983. Count X is all Plaintiffs against IDOE for violation of Section 504 and IDEA. Lastly, Count XI is James and Samia McCall against BSD and IDOE for wrongful death brought under Idaho state law.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) allows a party to move to dismiss claims for lack of subject matter jurisdiction. Fed R. Civ. P. 12(b)(1). The objection that a federal court lacks subject matter jurisdiction may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006). "Dismissal for lack of jurisdiction is not warranted to the extent that the complaint pleads facts from which federal jurisdiction clearly may be inferred." *Demarest v. United States*, 718 F.2d 964, 965 (9th Cir. 1983). A Rule 12(b)(1) jurisdictional attack may be facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a claim for failure to state a claim for which relief can be granted. Fed. R. Civ. P. 12(b)(6). To state a claim upon which relief can be granted, a plaintiff's complaint must include facts sufficient to show a plausible claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (citing *Bell Atlantic Corp. v. Twombly*. 550 U.S. 544 (2007)). The plaintiff cannot simply recite the elements of a cause of action and try to support that recitation with mere conclusory statements. *Id.* at 678. Under a motion to dismiss per Rule 12(b)(6), the facts in the complaint are assumed to be true. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).

In cases decided after *Iqbal* and *Twombly*, the Ninth Circuit has continued to hold dismissal of a complaint without leave to amend is inappropriate unless it is beyond doubt

**MEMORANDUM DECISION AND ORDER - 4**

that the complaint could not be saved by an amendment. *See Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009).

## IV. DISCUSSION

**A. The case cannot be dismissed based on James McCall's representation of his children.**

First, the Court must address the overarching issue raised by BSD regarding permissibility of James McCall[2] representing himself, as well as his three children. This issue is convoluted—not only by caselaw, but also by the actions of James during this litigation.

James is undoubtedly representing himself pro se, but it is unclear whether he is trying to represent the other Plaintiffs in a pro se capacity or whether he has established an attorney-client relationship with the other plaintiffs. James has not filed any notice of appearance for Samia McCall, C.M., S.M., or the Estate of M.M., however, he has signed pleadings as "Attorney for Plaintiffs." *See, e.g.,* Dkt. 1, at 61; Dkt. 21, at 21; Dkt. 22, at 21. For ethical and professional reasons, James's representation of his children is highly discouraged, but at this stage it is not clear this unorthodox arrangement is enough to dismiss the suit.

It is well settled in the Ninth Circuit that non-attorneys may represent themselves pro se but have "no authority to appear as an attorney for others . . . ." *C.E. Pope Equity Tr. v. United States*, 818 F.2d 696, 697 (9th Cir. 1987). However, this is not the scenario before the Court. Again, James is a licensed attorney in good standing with the state and federal

---

[2] Because both McCalls are attorneys, the Court will refer to Mr. McCall as James in this section for clarity.

MEMORANDUM DECISION AND ORDER - **5**

bar. BSD cites to *Johns v. Cnty. of San Diego* where the Ninth Circuit wrote "a parent or guardian cannot bring an action on behalf of a minor child without retaining a lawyer." 114 F.3d 874, 876 (9th Cir. 1997). True. But, this rule only applies to non-attorneys. *Id.* at 877 (explaining "[t]he issue of whether a parent can bring a pro se lawsuit on behalf of a minor falls squarely within the ambit of the principles that militate against allowing *non-lawyers* to represent others in court.") (citation modified). Certainly, James representing himself makes him a pro se litigant in regard to his own representation despite his status as an attorney. *See Burka v. U.S. Dep't of Health & Hum. Servs.*, 142 F.3d 1286, 1291 (D.C. Cir. 1998) (defining such a person as a "*pro se* attorney-litigant"); *see also Huffman v. Lindgren*, 81 F.4th 1016, 1021 (9th Cir. 2023) (stating that attorneys who appear pro se do not get the benefit of the liberal pleading standards afforded to non-attorney pro se litigants.). But this does not necessarily extend to James's representing the other plaintiffs.

BSD also cites some authority suggesting that even attorney-parents representing their children in IDEA suits are considered pro se, but this misinterprets the narrow holdings of those cases. *See* Dkt. 24, at 2-3. Citing *Rappaport v. Vance*, BSD first suggests an attorney cannot represent his or her own children. 812 F. Supp. 609 (D. Md. 1993). In that case, however, the District of Maryland held that an attorney representing themselves and their own child was not entitled to attorney's fees under IDEA, not that an attorney-parent cannot represent their child at all. *Id.* at 612. BSD also quotes *Spangler v. Pasadena City Bd. of Educ.* for the proposition that "[t]he Ninth Circuit has expressly held that parents may not represent their children where there is 'inadequate representation by, or a conflict of interest with, the parent.'" Dkt. 23, at 2 (citation modified). This quotation taken from

**MEMORANDUM DECISION AND ORDER - 6**

*Spangler*, however, is non-binding because it is from a footnote to the dissenting opinion which is citing a treatise. 537 F.2d 1031, 1035, n. 6 (9th Cir. 1976) (Wallace, J., dissenting). Thus, this quote does not carry the day for BSD.

In sum, the Court finds BSD's argument in favor of dismissal on the basis that James is representing his children unavailing. But again, this type of representation is fraught with ethical and professional issues. The Court strongly recommends that independent counsel represent James and Samia McCall, the surviving children, and the estate of M.M. However, the Court cannot find any caselaw *clearly* supporting the proposition that James *cannot* proceed at this time as currently situated.

With this issue of representation now behind it, the Court turns to the substantive legal bases for dismissal raised by BSD and IDOE. Because the Defendants' motions substantially overlap, the Court will discuss them in tandem as it addresses the various claims and defenses.

**B. Plaintiffs' ADA and 504 claims are not barred by a failure to exhaust administrative pathways as Plaintiff seeks relief which is not available under IDEA.**

The McCalls list several counts of violations of the ADA, Section 504, and the IDEA against BSD and IDOE. Some of the relief requested under these claims is available under the IDEA, only under the ADA or Section 504, or is available under all three.

The McCalls' claims largely stem from the allegation that the McCall children were unable to obtain FAPE in violation of the IDEA. But, they also allege violations of the ADA and Section 504, which are common claims to plead together, as the three statutory schemes have overlapping coverage. BSD and IDOE both argue the McCalls' IDEA, ADA,

**MEMORANDUM DECISION AND ORDER - 7**

and Section 504 claims are barred because they failed to exhaust their administrative remedies under §1415 of IDEA. Dkt. 12-1, at 7; Dkt. 16-1, at 8. However, the exhaustion requirement under IDEA is not as clear cut as the statute makes it seem.

The IDEA states:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under [§ 1415] shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(l). The Supreme Court has weighed in on this provision and has stated that artful pleading will not be able to circumvent this exhaustion requirement when the suit is ultimately seeking action remedying the denial of FAPE. *Fry v. Napoleon Cmty. Schs.*, 580 U.S. 154, 155 (2017) ("In determining whether a plaintiff seeks relief for the denial of a FAPE, what matters is the gravamen of the plaintiff's complaint, setting aside any attempts at artful pleading."). In determining the gravamen of the complaint, the court should look to: (1) whether the plaintiffs could have brought the same claim if the alleged conduct occurred at a public facility other than a school and/or, (2) whether an adult, like an employee or visitor, could allege the same claim at the school. *Id.* at 171.

Additionally, when a plaintiff is seeking relief unavailable under the IDEA, but which is available under the ADA or Section 504—such as compensatory damages— exhaustion is not required. *Luna Perez v. Sturgis Pub. Schs.*, 598 U.S. 142, 147–48 (2023) (explaining the conditions requiring exhaustion under the IDEA are "not met in situations

**MEMORANDUM DECISION AND ORDER - 8**

like ours, where a plaintiff brings a suit under another federal law for compensatory damages—a form of relief everyone agrees IDEA does not provide").

The Court finds the McCalls are similarly situated to the plaintiffs in both *Fry* and *Luna*. In *Fry*, the Supreme Court held the plaintiff's claims were of such a nature that they constituted the kind of claims of discrimination prohibited under the ADA and Section 504 independent of the plaintiff's claim that he was denied a FAPE. Fry had a service dog that was denied access to the school Fry was attending, which he claimed denied him a FAPE, as well as impermissibly discriminated against him. The Supreme Court determined this type of claim of discrimination could have been brought against a public library if they too had prevented Fry from using his service dog, thus the gravamen of his complaint was not solely about the denial of FAPE. In *Luna*, the plaintiff was seeking compensatory damages. The Supreme Court held that this fact alone was enough to prevent the IDEA's exhaustion requirement.

In the present case, the McCalls seek relief that is unavailable under the IDEA but available under the ADA and Section 504. The McCalls seek both compensatory and punitive damages against BSD and IDOE. These forms of relief are not available under the IDEA. Additionally, the McCalls plead facts which, if they were placed outside the school context, could constitute discrimination based on disability. For example, the Complaint alleges the McCall children were forced to wear masks to school when wearing masks was harmful to them due to their disabilities. Dkt. 1, at 16-17. If the school setting were changed to a public library or public theater, this fact could constitute disability discrimination as protected under the ADA and Section 504. Therefore, the McCalls plead facts sufficient to

MEMORANDUM DECISION AND ORDER - **9**

show the denial of FAPE is not the gravamen of their complaint. With the same analysis, the Court also determines that Counts I-VI state plausible claims for relief under the ADA and Section 504.

Therefore, the exhaustion requirement under § 1415(l) of the IDEA does not bar the ADA and Section 504 claims presented in Counts I-VI. However, as will be explained below, the associational ADA and Section 504 claims in Count VII will be dismissed.

### C. Plaintiffs' IDEA claims are barred for failure to exhaust administrative pathways.

The McCalls raise specific IDEA violation claims in their Tenth cause of action against IDOE, but in all the claims against the defendants for ADA and Section 504 violations, plaintiffs seek relief available under the IDEA, as well as other relief only available under the other two statutes from BSD and IDOE.

Like BSD and IDOE's arguments that the ADA and Section 504 claims are barred due to a failure to exhaust administrative pathways, they also argue the IDEA claims are barred for exhaustion reasons. Dkt. 12-1, at 7; Dkt. 16-1, at 8. The McCalls argue their IDEA claims are systemic and, therefore, do not trigger the exhaustion requirement. Dkt. 22, at 4. The Court agrees with BSD and IDOE on this point.

Under Ninth Circuit case law, there are three exceptions to the IDEA's exhaustion requirement: (1) Futility; (2) General Applicability; and (3) Inadequacy. *Hawai'i Disability Rts. Ctr. v. Kishimoto*, 122 F.4th 353, 366 (9th Cir. 2024). "To establish a general applicability exception to the IDEA's exhaustion requirements, a plaintiff must challenge policies that 'rise to a truly systemic level in the sense that the IDEA's basic goals are

threatened on a system-wide basis' and 'demonstrate in addition that the underlying purposes of exhaustion would not be furthered by enforcing the requirement.'" *Id.* at 367 (citing *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1304-05 (9th Cir. 1992)). "'A claim is systemic, and therefore entitled to the general applicability exception, if it concerns the integrity or reliability of the IDEA dispute resolution procedures themselves, or requires restructuring the education system itself in order to comply with the dictates of the Act.'" *Id.* (citing *Paul G. by & through Steve G. v. Monterey Peninsula Unified Sch. Dist.*, 933 F.3d 1096, 1101-02 (9th Cir. 2019)).

In *Hoeft*, the Ninth Circuit explained that "[s]tructuring a complaint as a challenge to policies, rather than as a challenge to an individualized education program formulated pursuant to these policies . . . does not suffice to establish entitlement to a waiver of the IDEA's exhaustion requirement." 967 F.2d at 1304. This makes sense, as one of the main purposes of exhaustion under the IDEA is to promote judicial efficiency by giving educational agencies the first opportunity to correct shortcomings in their educational programs for disabled children. *Id.* at 1303. Additionally, the plaintiff in *Hoeft* alleged shortcomings in the school district's extended school year services as well as procedural shortcomings related to receiving notice of their rights under the IDEA. The Ninth Circuit found these types of allegations insufficient to be truly systematic problems, and exhausting the IDEA procedures would have been helpful to remedy the plaintiff's issues.

Here, the McCalls have claims similar to the plaintiff in *Hoeft*. The McCalls allege a failure to follow IDEA requirements by BSD and IDOE. And if the McCalls had used the procedures set forth in § 1415 of IDEA, they very likely could have figured out a resolution

**MEMORANDUM DECISION AND ORDER - 11**

that would have improved the children's time at school and provided a FAPE. The McCalls allege no facts that suggest using the administrative procedures in the IDEA would not have furthered the purposes of exhaustion.

The McCalls counter they might have used the procedures for remedying educational issues under IDEA if they had received notice of their right to do so. But just as in *Hoeft*, the Court does not find this reason enough to waive exhaustion. *Hoeft*, 967 F.2d at 1305 (citing *Christopher W. v. Portsmouth School Comm.*, 877 F.2d 1089, 1093, 1095-97 (1st Cir. 1989) (lack of notice of procedural rights does not excuse exhaustion where plaintiff was represented by counsel prior to initiating suit)).

The McCalls are savvy parents, lawyers, and know how to request disability accommodations; they have dealt with their children's disability rights for years. Failure to receive notice of procedural remedies does not excuse exhaustion requirements here. Therefore, any claims brought under the IDEA or seeking remedies available under the IDEA are dismissed.

### D. James and Samia McCall's Associational Discrimination claims under Title II of the ADA and Section 504 of the Rehabilitation Act fail as a matter of law.

In their Seventh cause of action, James and Samia argue that they, as individuals, suffered associational discrimination under the ADA and Section 504 of the Rehabilitation Act. Dkt 1. at 46. The Court finds the McCalls have not pleaded sufficient facts to support this claim.

Title I of ADA extends to discrimination by association, which includes "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known

disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4). Similarly, Title III of the ADA states, "It shall be discriminatory to exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association." 42 U.S.C. § 12182(b)(1)(E). Title II is silent on associational discrimination claims, but it has been generally accepted that such claims can be brought under Title II as well. *See Espino v. Regents of the Univ. of California*, 666 F. Supp. 3d 1065, 1084 (C.D. Cal. 2023) (collecting cases). Section 504 of the Rehabilitation Act affords the same protection as the ADA. *Bragdon v. Abbott*, 524 U.S. 624, 632 (1998).

To succeed on a claim for associational discrimination under the ADA or Rehabilitation Act, a plaintiff must allege some "specific, direct, and separate injury" as a result of association with a disabled individual. *Glass v. Hillsboro Sch. Dist. 1J*, 142 F. Supp. 2d 1286, 1288 (D. Or. 2001). Plaintiffs must demonstrate that they themselves were harmed; that is, that they suffered a specific, separate, and direct injury to themselves caused by defendant's actions in violation of one of the above-mentioned statutes. *Id.*

Here, James and Samia McCall have not alleged a separate injury that qualifies for associational discrimination. For example, one of the alleged injuries is Defendants failure to provide James and Samia McCall with "sufficient support." Dkt. 1, at 47, ¶160. This is far too vague to qualify as the type of injury that would allow an associational discrimination claim and does not provide a plain statement of any injury. James and Samia

MEMORANDUM DECISION AND ORDER - **13**

McCall also allege that their "requests for accommodations, which directly resulted in all the McCall children being denied appropriate supports, as well as access to their education . . ." is an injury sustained by them as parents. Dkt. 1, at 47, ¶161. This is the exact type of injury that is considered derivative rather than direct and cannot support an associational discrimination claim. James and Samia McCall also state that because of their association with their disabled children, they lost constitutional rights. But, as will be explained below in the following section, all the alleged bad actions by the Defendants have been described as omissions of the Defendants to fulfill obligations, which is not the type of action (or rather inaction) that can lead to constitutional injuries, generally.

Therefore, Count VII is DISMISSED.

**E.  Plaintiffs' § 1983 Claims fail as a matter of law.**

The McCalls Eighth and Ninth causes of action against Defendants are for deprivation of M.M.'s right to life, and deprivation of James and Samia McCall's liberty right to the care, custody, and control of M.M. Dkt. 1, at 48. The McCalls argue these deprivations occurred through the omissions of BSD, IDOE, and their employees and are based upon perceived violations of statutorily created duties and a general failure to properly train staff. *Id.* at 52. The Court will first discuss the pure Fourteenth Amendment claim alleged in Count VIII. It will then turn to the Failure to Train claim of Count IX. Both claims are brought under § 1983.

The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The substantive aspect of the due process clause "provides heightened protection against

MEMORANDUM DECISION AND ORDER - 14

government interference with certain fundamental rights and liberty interests." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). However, the Fourteenth Amendment does not impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means. *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989). "[T]he general rule is that [a] state is not liable for its omissions." *Munger v. City of Glasgow Police Dep't,* 227 F.3d 1082, 1086 (9th Cir. 2000).

"There are two exceptions to this rule: (1) when a special relationship exists between the plaintiff and the state (the special-relationship exception); and (2) when the state affirmatively places the plaintiff in danger by acting with deliberate indifference to a known or obvious danger (the state-created danger exception)." *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 971–72 (9th Cir. 2011) (citation modified).

In the Ninth Circuit, a special relationship does not exist between the state and a child as a result of compulsory school attendance laws. *Id.* at 972–74. Accordingly, the only plausible exception in this case is the state created danger exception. The exception only applies where there is affirmative conduct on the part of the state in placing the plaintiff in danger and where the state acts with deliberate indifference to a known or obvious danger. *Id.* at 974. Additionally, under the state-created danger doctrine, the plaintiff must "show that her 'ultimate injury' was 'foreseeable.'" *Martinez v. City of Clovis*, 943 F.3d 1260, 1273 (9th Cir. 2019) (citing *Hernandez v. City of San Jose*, 897 F.3d 1125, 1133 (9th Cir. 2018)). "This does not mean that the exact injury must be foreseeable. Rather, the state actor is liable for creating the foreseeable danger of injury given the particular circumstances." *Id.* (citation modified).

MEMORANDUM DECISION AND ORDER - **15**

Here, the § 1983 claims fail on the elements of foreseeability and deliberate indifference for similar reasons. Even if it is assumed, arguendo, that BSD and IDOE's omission on providing a FAPE or properly identifying M.M. under certain provisions of IDEA constitutes affirmative conduct, there are no facts alleged suggesting as a "matter of common sense" that attending school would cause M.M. to commit suicide. *E.g.*, *Wood v. Ostrander*, 879 F.2d 583, 590 (9th Cir. 1989) (reasoning "the inherent danger facing a woman left alone at night in an unsafe area is a matter of common sense"). If it was common sense that M.M. attending school in the Boise School District would lead to her suicide, the Court does not think James and Samia McCall would have sent M.M. to school, especially after M.M. had already attempted suicide before. Similarly, BSD and other district staff could not have been aware that M.M. would commit suicide when she did; it is unlikely that if they had known the risk they would have let M.M. come back to school. By all accounts M.M. was a good student, "twice exceptional," and maintained great grades. Dkt. 1, at 30. While the Complaint does allege the Defendants acted with deliberate indifference, the alleged deliberate indifference was to M.M.'s disabilities, not her suicidal tendencies. The Complaint does not allege any district employees ignored any suicidal thoughts, ideations, or other warnings signs expressed by M.M. The omissions alleged by Plaintiffs do not amount to the type of omissions to which the government can be liable under § 1983.

For a failure to train claim, the plaintiff must establish that the governmental agency had a policy which amounted to deliberate indifference to the plaintiff's constitutional rights and that the policy was the moving force behind the constitutional violation. *City of*

MEMORANDUM DECISION AND ORDER - **16**

*Canton v. Harris*, 489 U.S. 378, 389-91 (1989). This means that the plaintiff must allege facts showing the defendants "disregarded the known or obvious consequence that a particular omission in their training program would cause [] employees to violate citizens' constitutional rights." *Flores v. Cnty. of Los Angeles*, 758 F.3d 1154, 1159 (9th Cir. 2014)

Plaintiff's failure to train claims fail because they allege no facts which point to a particular omission in an identified training program. Even if a particular training program and omission of specific training was identified, as explained above, none of the facts alleged in the complaint create a plausible claim that the unidentified training omission was omitted with deliberate indifference to an obvious risk of harm. None of the facts currently alleged suggest any of the Defendants were aware that M.M.'s suicide was imminent or that their policies were the moving force behind such a risk.

Additionally, as to IDOE, the Eleventh Amendment also bars the McCalls § 1983 claims because it is a state entity under the Idaho State Board of Education (Idaho Code § 33-101) and it has not waived sovereign immunity in this circumstance (*Joseph v. Boise State Univ.*, 998 F. Supp. 2d 928, 948–49 (D. Idaho 2014).

For these reasons, Counts VIII and IX are DISMISSED.[3]

**F. The claims for wrongful Death by C.M. and S.M. against BSD and IDOE, as well as all other wrongful death claims against IDOE, fail for lack of notice.**

In addition to all the federal based causes of action, the McCalls' Eleventh cause of action is a Wrongful Death Claim brought under Idaho state statutes.

---

[3] BSD argues all the individual defendants should be dismissed because the claims against them are duplicative of the claims against the governmental entities. Dkt. 12-1, at 15–17. The only claim listing individual defendants is Count IX—which the Court has disposed of—therefore, the requested relief has been effectuated.

MEMORANDUM DECISION AND ORDER - **17**

Wrongful death claims in Idaho are statutory in nature, codified at Idaho Code § 5-311, and subject to the Idaho Tort Claims Act ("ITCA"). Under the ITCA, a plaintiff filing suit against the state is required to file a notice of tort claim with the secretary of state "within 180 days from the date the claim arose or reasonably should have been discovered, whichever is later." Idaho Code § 6-905. If a plaintiff fails to file within the time limits "[n]o claim or action shall be allowed against a governmental entity . . . ." Idaho Code § 6-908. For claims by minors, they must file within "one hundred eighty (180) days after said person reaches the age of majority or six (6) years from the date the claim arose or should reasonably have been discovered, whichever is earlier." Idaho Code § 6-609A(1). Under the ITCA, the BSD is a political subdivision and the IDOE is considered the state. Idaho Code § 6-902(1-2).

To begin, the only claimants listed on the tort claims filed with BSD and IDOE are James and Samia McCall. Therefore, any wrongful death claims brought by S.M. and C.M. are improper without filing the statutorily-required tort claim with the proper government entities.[4] Secondly, for tort claims against the state, the secretary of state must be served with the claim. *McQuillen v. City of Ammon*, 747 P.2d 741, 744 (Idaho 1987) ("Compliance with the Idaho Tort Claims Act's notice requirement is a mandatory condition precedent to bringing suit, the failure of which is fatal to a claim, no matter how legitimate.").[5]

---

[4] The Court is not suggesting here that notice of claims are time barred for C.M. or S.M. based on the facts presented in this case so far.

[5] Notably, as the Court recently held, while notice is required before filing suit, a response is not. *See Union Block Associates et al., v. Tim Keane et al.*, 2026 WL 883634, at *13 (D. Idaho Mar. 31, 2026).

**MEMORANDUM DECISION AND ORDER - 18**

Here, while James and Samia McCall did write a claim and sent it to the lead counsel for the IDOE (Dkt. 1-3), there is no evidence that this claim was filed with the secretary of state. For this reason, the wrongful death claims against IDOE must be dismissed. In contrast, the wrongful death claim against BSD was filed with the correct person, the clerk of the political subdivision, and so satisfied the notice requirement.

Therefore, Count XI is DISMISSED for all parties except for James and Samia McCall against BSD.

## V. CONCLUSION

James McCall's interrelated status as attorney, pro se litigant, and father concerns the Court. However, Defendants have not persuasively shown that the current posture is legally barred, and the Court will not dismiss on that ground.

That said, for the reasons outlined above, Counts VII through X are dismissed. Counts I though VI remain to the extent they do not seek remedies available under the IDEA. Count XI is partially dismissed.

Lastly, some Defendants suggest the Court should not grant leave to amend—at least as to some claims—because doing so would be an exercise in futility. Dkt. 16-1, at 19; Dkt. 24, at 10. Except for Plaintiffs claims that are barred as a purely legal matter— the claims brought under the IDEA or seeking remedies available under the IDEA—the Court will allow Plaintiffs leave to amend.[6]

---

[6] As outlined above, some claims require (or required) exhaustion. Assuming the time to do so has not expired, Plaintiffs could exhaust and then re-plead those claims.

**MEMORANDUM DECISION AND ORDER - 19**

## VI. ORDER

1. BSD's Motion to Dismiss (Dkt. 12) and IDOE's Motion to Dismiss (Dkt. 16) are GRANTED in PART and DENIED in PART as outlined above.

2. Counts VII – X are DISMISSED.

3. Count XI is partially DISMISSED as to C.M. and S.M.'s wrongful death claims generally, and all wrongful death claims against IDOE.

4. Any Amended Complaint is due within 30 days of the date of this order.

DATED: May 11, 2026

David C. Nye
U.S. District Court Judge